## W. HUTTO *v.* THE STATE.

1. INDICTMENT. — In the second count of an indictment the name of the month was written "Janury." In the first count (which was dismissed) it was correctly spelled. *Held,* that a motion in arrest of judgment, based on the misspelling, was correctly overruled. Bad spelling does not vitiate, and the word is *idem sonans* with January; and, moreover, the first count had it correct.

2. SAME. — In an indictment for the theft of property of one Pettis, his name was in one place written "Pittis," if the dot over the second letter was the controlling sign; otherwise the letter appears to be "e," and the name correctly spelled. *Held,* not sufficient cause in arrest of judgment.

3. VERDICT. — The charge to the jury may be looked to for the purpose of ascertaining the offence of which the verdict convicts the accused.

4. THEFT OF CATTLE. — If the brand on a stolen animal be the only evidence of ownership relied on by the State, then it is necessary for the State to prove the record of the brand. But, irrespective of any brand, the ownership and identification of the animal may be shown by the flesh-marks, or other satisfactory evidence.

5. CHARGE OF THE COURT. — It is always advisable to give in charge to the jury the presumption of innocence as well as the doctrine of reasonable doubt, and a refusal to give it is error. The mere omission of the presumption, however, when not asked, is not ground for reversal.

6. SAME. — The charge need not submit a minor degree of the offence alleged in the indictment, unless there is evidence requiring it.

7. NEW TRIAL. — To entitle a defendant to a new trial on account of newly discovered evidence, he must bring himself within the established rules which control the subject. It is well settled that if the new evidence be merely cumulative of that adduced at the trial, it furnishes no ground for a new trial.

APPEAL from the District Court of Burnet. Tried below before the Hon. W. A. BLACKBURN.

The material facts are disclosed in the opinion of the court.

*Makemson & Fisher*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

WHITE, J. Two counts are contained in the indictment in this case. One is for wilfully taking into possession and driving cattle from their accustomed range, without the consent of, and with intent to defraud, the owner, it being framed under art. 2410*b*, Paschal's Digest; and the other an ordinary count, simply charging the theft of the cattle.

On the trial, the district attorney dismissed or *nolle prossed* the first count, and the defendant was only held to answer to the second, for theft. The court, in its charge to the jury, only submitted the law applicable to theft, and no special or additional instructions to the charge were asked for defendant. The verdict returned was: " We, the jury, find the defendant guilty of theft, and assess his punishment at three years' imprisonment in the State penitentiary." Judgment was rendered that the defendant was guilty " of theft of cattle."

A number of supposed errors are complained of. We will first notice those urged in the motion to arrest the judgment. Two of the grounds therein set out go to the sufficiency and certainty of the second count in the indictment, — it being the one selected, and under which the case was tried: *First*, that the time alleged is uncertain, in that the month in which the crime is said to have been committed is written "*Janury*," instead of " January," — there being no such month as " Janury " known to our calendar. *Witten* v. *The State*, 4 Texas Ct. App. 70, is in point on this question. There it was said: " It has been held time and again that bad spelling will not vitiate an indictment, and we can perceive no good reason why bad

or awkward writing should." And in that case an indict-
ment was sustained where it was questioned as to whether
the month "February" was spelled with a "T" or an
"F." In *Haney* v. *The State*, 2 Texas Ct. App. 504,
cited and relied on by counsel, it was held that "*burger-
ally*" was not *idem sonans* with "burglary;" that it was
unintelligible, and that the verdict was therefore bad. On
the other hand, we think "Janury" is *idem sonans* with
"January;" and if not so, that it is certainly intelligible,
and no one could well have been misled by it. In the first
count, which was dismissed, the name of the month was
written "January." In *Wills* v. *The State*, 8 Mo. 52, it
was held that "where a *nolle prosequi* was entered to the
first of the two counts of an indictment, and the time of
committing the offence was only shown by reference to the
first count, the defendant might be tried and convicted on
the second count."

*Secondly*, it is claimed that the second count is uncertain,
in this: that it alleges the taking of the property from and
out of the possession of *William Pittis*, and alleges the
property to belong to William Pettis. In copying the name
Pettis, the clerk has evidently endeavored to give us, as near
as possible, an exact representation of the appearance of
the letter "e," or "i," as it looks written in the indict-
ment; and but for the fact that the letter has a dot over it,
it would undoubtedly be taken for and called "e," and, in
our judgment, was written for and intended as an "e."·
We are thus asked to reverse the case simply on account of
a dot over a letter, which may have gotten there by accident
entirely. This we cannot do, and especially in a case where
the two names, if spelled either with an "e" or an "i,"
would be so nearly *idem sonans* that we cannot say they do
not come entirely within the rule.

A remaining ground urged in the motion in arrest is that
the verdict of the jury (*supra*) does not find the defendant
guilty of "theft of cattle," but guilty of "theft" only.

The position is not well taken; the verdict is not only certain, but in every respect responsive to the issue before the jury. Were there any doubt in the premises, this case would come within the rule announced in *Marshall* v. *The State*, 4 Texas Ct. App. 549, viz., that "the charge to the jury may be looked to for the purpose of ascertaining the offence of which their verdict in such a case convicts the accused." (Citing *Chester* v. *The State*, 1 Texas Ct. App. 702, and *Patterson* v. *Allen*, 50 Texas, 23.) See also *Nettles* v. *The State*, 5 Texas Ct. App. 386.

Defendant's first bill of exceptions was reserved to the action of the court in permitting the district attorney to ask "the witness William Pettis if the cattle he found were his cattle," to which defendant objected because the proper mode of proving the ownership was by the records of marks and brands; which objection the court overruled, and permitted the State to prove the mark and brand of said witness for the purpose of identifying the cattle. We see no error. As was said in *Fisher* v. *The State*, 4 Texas Ct. App. 181, "the rule is this: Where the prosecution relies entirely upon the brand upon the stolen animal as evidence of ownership as against the accused, then the State must show a recorded brand. *Poage* v. *The State*, 40 Texas, 151; Pasc. Dig., art. 4659; *Allen* v. *The State*, 42 Texas, 517. But this is the rule only where the brand is solely relied upon as evidence of ownership. Where the animal can be proven and identified by flesh-marks, or other evidence of title or ownership, independent of the brand, it was never intended that the prosecution must fail for want of a recorded brand also. 'For an unrecorded brand is admissible to aid in proving the identity of a stolen animal, the title being established by other testimony.' *Poage* v. *The State*, 43 Texas, 454; *Johnson* v. *The State*, 1 Texas Ct. App. 333." Besides the proof of the marks and brands as aforesaid, the statement of facts distinctly sets out that "the State proved by witness William Pettis his ownership and loss of

the cattle mentioned in the indictment, some time during the latter part of January, a. d. 1878, the range and description of the said cattle," etc.

Three main objections are urged to the charge of the court: *First*, that it failed to define a fraudulent intent; *secondly*, it failed to instruct the jury that " the defendant is presumed to be innocent until his guilt is established by legal evidence ;" *thirdly*, the court did not give the defendant the benefit of the lesser penalty, as provided for by art. 2410*b*, Paschal's Digest.

As we have before stated, no special or additional instructions were asked by defendant. Had he asked an additional and appropriate instruction, defining more fully a fraudulent intent, and the court had refused to give it, we would have been prepared to say whether it was error or not. *Johnson* v. *The State*, 1 Texas Ct. App. 118. But in our opinion the charge of the court was sufficiently full upon the subject; for, in addition to the statutory definition of theft, the judge in a subsequent paragraph made a direct application of this definition to the facts in the case, and the jury could not have been ignorant or have misunderstood what were the constituent elements of the crime, necessary to be ascertained and found, to warrant a verdict of guilty.

With regard to the presumption of innocence, whilst it has ever been held a ground of reversal where the court has refused to give it when properly asked, and whilst it is generally agreed that it would always be better for the court to give it in charge, in connection with the reasonable doubt, in the language of the statute (Pasc. Dig., art. 3105), yet we know of no case in our own or other States which has gone to the extent of reversing a judgment for the want of such an instruction, where it was not expressly asked and refused. *Thomas* v. *The State*, 40 Texas, 36; *Black* v. *The State*, 1 Texas Ct. App. 368; *Coffee* v. *The State*, 5 Texas Ct. App. 545; *McMullen* v. *The State*, 5 Texas Ct. App. 577, and authorities collated.

A reasonable doubt must be charged in every felony case, whether asked or not; it is error to refuse to charge the presumption of innocence, whenever asked. The court in this case charged the reasonable doubt.

As to the third objection, — that the court did not charge the law covering a lesser degree of offence as defined by art. 2410*b*, Paschal's Digest, for removing live stock from its accustomed range, — it is only necessary to reply that the count upon which he was tried charged only theft; and as for the evidence, whilst it did show defendant in possession of the cattle, and that he branded, and changed the marks and brands on them, at Blair's pen, in Burnet County, it does not show that Blair's pen was not within the limits of their accustomed range. And though the cattle were subsequently found by the owner, and driven back from Sam Brown's ranch, in Lampasas County, a distance of forty-five miles from Blair's pen, the evidence does not disclose who drove them to that point, or that defendant was ever seen with them after they left Blair's pen. This being the state of the evidence, there was nothing calling for or requiring a charge upon a state of case not made, so far as this defendant is concerned, by the evidence. *Marshall* v. *The State*, 4 Texas Ct. App. 549; *Haynes* v. *The State*, 40 Texas, 52. The facts in this case make it essentially different in this regard from the cases of *Campbell* v. *The State*, 42 Texas, 593, and *Slack and Payton* v. *The State*, decided by this court at the Austin term, 1879, and published in the "Texas Law Journal," Vol. 3, No. 8 (October 22, 1879). We believe the charge of the court fully presented the law of the case, and was as favorable to the defendant as the law and the facts warranted.

Nor was error committed in overruling defendant's motion for a new trial. It may be conceded that in his supplemental motion defendant makes quite a strong showing in support of his *alibi*. Still he has not brought him-

self within the rules for newly discovered evidence; and in addition to the fact that the evidence sought cannot be said to be newly discovered, it is further obnoxious in that it is simply cumulative of evidence already adduced on the trial. *Johnson* v. *The State*, 2 Texas Ct. App. 456; *Harmon* v. *The State*, 3 Texas Ct. App. 51.

We have endeavored to meet all the points made and relied upon by the able counsel representing appellant. Our conclusion upon the whole case before us is that defendant has been fairly tried and legally convicted, and, being unable to see any good and valid reason why the conviction should not stand, that it is our duty to affirm the judgment; and it is accordingly so done. The judgment is affirmed.

*Affirmed.*